**In the Matter of HEIGHTS BAN CORPORATION, Debtor.**

**Bankruptcy No. 86–2193–C J.**

United States Bankruptcy Court, S.D. Iowa.

Aug. 9, 1988.

Robert A. Gamble and Julie Johnson McLean, Des Moines, Iowa for debtor.

F.L. Burnette, II, Des Moines, Iowa for Brenton Nat. Bank.

Mark D. Walz & William T. Hundman, Des Moines, Iowa for Peoples.

Francis X. Buckley, Jr., St. Louis, Mo., for Mercantile.

ORDER ON MOTION TO CONVERT

LEE M. JACKWIG, Chief Judge.

Peoples Bank of Bloomington, Illinois (Peoples) and Mercantile Bank National Association (Mercantile) moved to convert this Chapter 11 case to a Chapter 7 case on September 1, 1987. The motion was heard in Des Moines, Iowa on October 27, 1987. Robert A. Gamble and Julie Johnson McLean appeared on behalf of the debtor. Francis X. Buckley, Jr. appeared on behalf of Mercantile. Mark D. Walz and William T. Hundman appeared on behalf of Peoples. At the hearing, the court ordered the parties to brief the matter and to submit a stipulation of facts by November 27, 1987. If a factual dispute arose, the parties were directed to notify the court for an evidentiary hearing. The court scheduled a further hearing on March 16, 1988. The aforementioned individuals appeared at the hearing and submitted a stipulation of facts. Also present at the hearing was F.L. Burnette, II appearing on behalf of Brenton National Bank (Brenton).

Peoples and Mercantile contend that they are the only noninsider impaired creditors in this case and, because they have voted and will continue to vote against the plan submitted by the debtor, the debtor will not satisfy the requirements of 11 U.S.C. section 1129(a)(10). Accordingly, they argue that the debtor will not be able to invoke the so called "cram down" provisions of 11 U.S.C. section 1129(b). Both creditors maintain that conversion of the case to one under Chapter 7 would be in their best interests as contemplated by 11 U.S.C. section 1112(b). Debtor argues that Brenton holds a claim against the estate, is impaired under the plan and is not an insider. Peoples, Mercantile and the debtor have filed briefs. The matter is fully submitted.

## FACTS

The debtor, a one-bank holding company, filed for Chapter 11 relief on August 8, 1986. The three shareholders are John A. Witmer, Janet S. Witmer, and Sam Hovey. These individuals serve as officers and directors of the debtor. The debtor owes John Witmer $10,257.00 plus interest from November 15, 1986. The debt is unsecured.

The debtor owns approximately 86% of the issued and outstanding stock of First Security Bank of Mackinaw (First Security). To finance the purchase of the stock, the debtor borrowed from Peoples. To secure the indebtedness, the debtor granted Peoples a security interest in the stock of First Security. On October 9, 1986 Peoples filed a proof of claim in the amount of $387,478.70.

The debtor is indebted to Mercantile by virtue of a certain debenture issued by the debtor originally to Hill Dodge Limited, another bank holding company owned by John Witmer. The debenture was pledged as collateral for $140,000.00 which Hill Dodge Limited borrowed from Peoples Bank in 1980. Subsequently, the loan and debenture were assigned to Mercantile, which paid off Peoples. The debt is unsecured.

The parties stipulated to the following facts:

1. On February 17, 1983, John A. Witmer, Janet S. Witmer, Janet S. Witmer as custodian for John A. Witmer II, and Janet S. Witmer as custodian for R. Scott Witmer (the "Pledgors") executed a certain Pledge and Security Agreement in favor of Brenton National Bank of Des Moines ("Brenton Bank") covering 250 shares of the capital stock of the Debtor and 3,801 shares of the capital stock of First Security Bank of Mackinaw, Illinois, and other collateral. At the same time, the Debtor executed a certain Hypothecation Agreement and stock power covering the stock of First Security Bank of Mackinaw, Illinois. True and correct copies of the Pledge and Security Agreement and Hypothecation Agreement and stock power are attached to the Proof of Claim filed herein by Brenton Bank as amended (the "Brenton Proof of Claim"). The Pledge and Security Agreement and Hypothecation Agreement and stock power were given as collateral security for certain debts and obligations of John A. Witmer and Janet S. Witmer to Brenton Bank in the aggregate amount of

$1,308,000.00. A Financing Statement covering said stock, a true copy of which is attached to the Brenton Proof of Claim, was filed with the Secretary of State of Illinois on March 21, 1983.

2. At a meeting held in the offices of Ahlers, Cooney, Dorweiler, Allbee & Haynie in Des Moines, Iowa, in the spring of 1985, representatives of Peoples Bank of Bloomington, Illinois ("Peoples Bank") were advised by Robert McKee, then an officer of Brenton Bank, that Brenton Bank claimed a lien upon the stock of First Security Bank of Mackinaw, Illinois, owned by the Debtor and a lien upon the stock of the Debtor owned by John A. Witmer and Janet S. Witmer. Peoples Bank was further advised of the claim of Brenton Bank in a letter dated May 29, 1985, from Attorney Tom Stanberry of the Ahlers Law Firm to Mr. Anderson of Peoples Bank. A copy of that letter is attached to this Stipulation marked Exhibit "A" and by this reference made a part hereof. Neither Peoples Bank nor any officer or agent of Peoples Bank had any knowledge of the Hypothecation Agreement dated February 17, 1983, or the stock power, each of which are attached to the Brenton Proof of Claim, until March 15, 1988.

3. In the fall of 1985, representatives of Peoples Bank orally requested representatives of Brenton Bank to subordinate the security interest claimed by Brenton Bank to a new security interest to be granted by John A. Witmer and Janet S. Witmer in favor of Peoples Bank to secure the refinancing of a $98,000.00 personal note executed by John A. Witmer and Janet S. Witmer payable to the order of Peoples Bank. Shortly thereafter, that request was orally refused by Brenton Bank.

4. On April 13, 1987, in settlement of the debts and obligations of John A. Witmer and Janet S. Witmer to Brenton Bank in an amount in excess of $1,875,000.00, John A. Witmer, Janet S. Witmer and Brenton Bank executed a Settlement Agreement, a true copy of which is attached to the Brenton Proof of Claim (the "Brenton Settlement Agreement"), a true copy of the Brenton Settlement Agreement is also attached hereto as Exhibit B. Following the execution of the Brenton Settlement Agreement, Financing Statements were filed with the Secretary of the State of Iowa on May 23, 1987, and with the Secretary of State of Illinois on June 4, 1987. True copies of the Financing Statements are attached to the Brenton Proof of Claim.

5. The Promissory Notes payable by the Debtor to John A. Witmer described in the Brenton Settlement Agreement were previously delivered to, and remain in the possession of, Peoples Bank, all as identified in the Security Agreement executed by John A. Witmer and Janet S. Witmer in favor of Peoples Bank dated August 2, 1985.

6. Except for the above-described oral and written notification of the security interest claimed by Brenton Bank, Peoples Bank was given no specific instructions or directions by Brenton Bank regarding the stock of First Security Bank, Mackinaw, Illinois, and the stock of the Debtor which had been in the possession of Peoples Bank since February 1980.

The debtor's first plan was filed on February 17, 1987. It classified and designated claims and interests as follows:

*Class 1:* Administrative claims (nonvoting);

*Class 2:* Peoples' claim of $415,000.00 secured by First Security stock (voting impaired);

*Class 3:* Mercantile's unsecured claim of $140,000.00 (voting impaired);

*Class 4:* John A. Witmer's unsecured claim of $10,257.00 (voting impaired); and

*Class 5:* Common stockholders' interests (voting impaired).

The Class 4 claim holder (John Witmer) accepted the plan. The Class 5 interest holders (John Witmer, Janet Witmer and Sam Hovey) accepted the plan. Peoples and Mercantile rejected the plan.

At the July 14, 1987 confirmation hearing, the debtor submitted an amended plan which contained essentially the same classi-

fication and designation of claims and interests as in the original plan. Upon representations made by debtor's counsel, the court directed that the amended plan be circulated and new ballots be issued. Peoples and Mercantile rejected the amended plan. Sam Hovey accepted the amended plan as a Class 5 interest holder. John and Janet Witmer did not vote in any class. Brenton filed an acceptance ballot as a Class 5 interest holder on October 22, 1987 and amended the ballot on December 9, 1987 to indicate it was also accepting the amended plan as the holder of the Class 4 claim.

Brenton was not listed on the debtor's schedules nor treated under the terms of the plan or the amended plan. The original ballot indicated that Class 4 "consists of the unsecured claim of John A. Witmer in the principal sum of $10,257.00 plus interest from November 15, 1986" and that Class 5 "consists of the present common stockholders of the Debtor". The amended ballot added the following to Class 4: "This claim has been assigned to Brenton National Bank of Des Moines as security for indebtedness in the principal sum of $200,-000.00 secured by the Debtor's stock of First Security Bank.". The amended ballot added the following to Class 5: "The shareholder interests of John A. Witmer and Janet S. Witmer have been assigned to Brenton National Bank of Des Moines as security for indebtedness in the principal sum of $200,000.00 secured by the Debtor's stock of First Security Bank.".

## DISCUSSION

■ 11 U.S.C. section 1129(a) provides that a court shall confirm a plan only if certain requirements are met. Paragraph 10 of that subsection states:

> If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, *determined without including any acceptance of the plan by any insider.*

11 U.S.C. § 1129(a)(10) (emphasis added). Having at least one impaired class that has voted in favor of the plan becomes critical when any impaired class has rejected the plan. That is because paragraph 8 of section 1129(a) requires that "[w]ith respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan". 11 U.S.C. § 1129(a)(8). The only possible way around paragraph 8 is to invoke and to satisfy the "cram down" provisions of 11 U.S.C. section 1129(b). However, before the court can consider the merits of the plan treatment under subsection (b), it must find that paragraphs 1 through 7 and 9 through 12 of subsection (a) have been satisfied. 11 U.S.C. section 1129(b)(1) states:

> Notwithstanding section 510(a) of this title, *if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan,* the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. (Emphasis added.)

Under the facts of this case, two impaired classes have rejected the amended plan. Accordingly, the debtor must establish that an impaired class of claims, exclusive of any insider votes, has accepted the amended plan.

Clearly, the designation of Class 5 in the original and amended plan and in the original and amended ballots is one of equity interests, not claims against the estate as contemplated by section 1129(a)(10). An assignment of such interests cannot transform them into the necessary claims. Class 4 does consist of an unsecured claim but is that of an insider. The parties do not cite and the court has not found any dispositive case law regarding whether the assignee of an insider claim is deemed to be an insider for purposes of section 1129(a)(10).

11 U.S.C. section 101(30)(B) defines an "insider" in the corporate context as including the director of the debtor, an officer of

the debtor or a person in control of the debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, or a relative of a general partner, director, officer, or person in control of the debtor. The debtor contends that Brenton does not fall within the ambit of section 101(30).

The legislative history of section 101(30)(B) states that "[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor". S.Rep.No. 95–989, 95th Cong., 1st Sess., 25, *reprinted in* 1978 U.S. CODE CONG. & ADMIN. NEWS 5787, 5810. Persons not specifically defined but of similar type also can be "insiders". *In re Blesi*, 43 B.R. 45, 48 (Bankr.D.Minn.1984); *see also, Matter of Montanino*, 15 B.R. 307, 310 (Bankr.D. N.J.1981) ("use of the word 'includes' in the definition of an insider is not a limiting term ...").

Under these authorities the court concludes that Brenton is an "insider" for purposes of section 1129(a)(10). Whether the court focuses on Class 4 or Class 5, there is no doubt that the Witmers are insiders as they are officers and directors of the debtor. Brenton's interest in the debtor is derived solely from the fact that the Witmers offered their shareholder interests in the debtor and the debtor's stock in First Security to Brenton as security for a personal loan. The principals of the debtor as grantors of the security interest and Brenton as holder of that security interest are so interlocked that the interests of the Witmers and Brenton are indistinguishable with respect to the debtor for purposes of section 1129(a)(10).

If the court were to accept the debtor's theory, the operation of section 1129(a) would be seriously undermined. Debtors unable to obtain the acceptance of an impaired creditor simply could assign insider claims to third parties who in turn could vote to accept. This the court cannot permit.

At the time of the last hearing, the debtor asked the court for permission to amend further its plan. This time the debtor seeks to add to its arguments that Brenton had a prepetition claim by virtue of the transaction with the Witmers in 1983. Without ruling on the merits of the various arguments advanced by the debtor and by Peoples and Mercantile with respect to the validity of any prepetition claim, the court observes that its conclusion that Brenton is an insider due to the sufficiently close relationship between Brenton and the debtor via the principals of the debtor under the facts of the case and based on policy grounds would not be affected by any favorable finding for the debtor on the status of the prepetition claim. Hence, the court will not continue the pending matter to entertain debtor's further amendment at this very late date in the reorganization process.

Given that Brenton is an insider, its acceptance vote cannot be counted for purposes of section 1129(a)(10). Peoples and Mercantile are the only noninsider impaired claims. They have indicated they will not vote for any plan the debtor might put forward. Therefore, it is clear no plan can be effectuated.

Peoples and Mercantile ask that the case be converted to a Chapter 7 case. Taking into consideration the record as a whole and the complexity of the various transactions, the court concludes that conversion is in the best interest of the creditors and the estate.

### ORDER AND CONCLUSION

WHEREFORE, based upon the foregoing discussion, the court finds that Brenton is an insider for purposes of 11 U.S.C. section 1129(a)(10) and that the debtor is unable to effectuate a plan. Pursuant to 11 U.S.C. section 1112(b), the court further finds that conversion to a Chapter 7 case is in the best interests of the creditors and the estate.

THEREFORE, Peoples' and Mercantile's motion to convert is granted.