**In re METRO SHIPPERS, INC., Debtor.**

**Bankruptcy No. 85–01934G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 5, 1986.

Edward Toole, Mary F. Walrath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for the moving creditors.

Melvin Lashner, Paul Mashmeyer, Melvin Lashner Associates, Philadelphia, Pa., for Fred Zimmerman, trustee for the debtor, Metro Shippers, Inc.

Scott B. Bennett, Philadelphia, Pa., for Conrail.

Fred Zimmerman, Pennsauken, N.J., trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

In a case of first impression in this district, the first of two major questions for resolution is whether an election for a trustee in a chapter 7 case may be upset because an attorney at law arguably violated the bar to the solicitation of proxies and allegedly also, as a holder of multiple proxies, did not file with the clerk of the court a

list of proxies and a statement of the pertinent circumstances surrounding the acquisition of those proxies. The second question is whether the election may be overturned on the basis that the first meeting of creditors, at which the election was held, was convened beyond the time limits prescribed in Bankruptcy Rule 2003. For the reasons set forth below we will not overturn the election but, rather, will validate it.

The facts of this controversy are as follows:[1] An involuntary petition for relief under chapter 7 of the Bankruptcy Code ("the Code") was filed against the debtor. An order for relief was subsequently entered and we then appointed Fred Zimmerman ("Zimmerman") as interim trustee.

Prior to the filing of the petition, the debtor had been in the business of freight forwarding over America's rail system. Consequently, unsecured claims amounting to approximately 75% of the debtor's unsecured indebtedness are owed to nine nationally known railroads, one of which is Conrail, which was formerly the Penn Central Railroad.

When the debtor failed to file the schedules and statement of affairs required by Bankruptcy Rule 1007, Fred Zimmerman undertook to prepare and file the documents. Due, in part, to some delay by the interim trustee, or his counsel, the requisite papers were not filed until nearly nine months from the date of the entry of the order for relief. Shortly after their filing, a first meeting of creditors was held pursuant to 11 U.S.C. § 341(a), at which time elections for a trustee and a committee of unsecured creditors were conducted under the authority of 11 U.S.C. §§ 702[2] and 705.[3] Carl Helmetag, Esq., was elected by eight unsecured creditors who voted in his favor through their joint counsel, Mary Walrath, Esq. ("Walrath"), of the firm of Clark, Ladner, Fortenbaugh & Young ("Clark, Ladner"). By its counsel, Scott Bennett, Esquire, Conrail also voted in favor of Mr. Helmetag.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

2. § 702. Election of trustee.
   (a) A creditor may vote for a candidate for trustee only if such creditor—
   (1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;
   (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and
   (3) is not an insider.
   (b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.
   (c) A candidate for trustee is elected trustee, if—
   (1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section vote; and
   (2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.
   (d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.
   11 U.S.C. § 702.

3. § 705. Creditors' committee
   (a) At the meeting under section 341(a) of this title, creditors that may vote for a trustee under section 702(a) of this title may elect a committee of not fewer than three, and not more than eleven, creditors, each of whom holds an allowable unsecured claim of a kind entitled to distribution under section 726(a)(2) of this title.
   (b) A committee elected under subsection (a) of this section may consult with the trustee in connection with the administration of the estate, make recommendations to the trustee respecting the performance of the trustee's duties, and submit to the court any question affecting the administration of the estate.
   11 U.S.C. § 705.

Helmetag's credentials for the position of trustee in this case are impressive. Until several years ago, and for many years previous, he was house counsel for the Penn Central Railroad. He has almost fifty years' experience as counsel in the transportation industry, and is familiar with all pertinent aspects of the railroad business, including freight forwarding.

Over the past several years Clark, Ladner has represented each of the eight unsecured creditors for whom it voted and it testified that each of the eight creditors requested it vote for Helmetag through proxy. Bankruptcy Rule 2006(e).

After the vote for the trustee, the interim trustee filed preference complaints against some of the unsecured creditors who voted in favor of Helmetag. Clark, Ladner then filed the instant motion under Bankruptcy Rule 2003(d), *infra*, for a determination that the elections of the trustee and the creditors' committee were valid. The interim trustee has objected to the election of the trustee.

■ In a chapter 7 case, shortly after the order for relief, the bankruptcy judge appoints an interim trustee. Notice of the entry of the order for relief is sent to creditors who are therein also informed of the date on which a first meeting of creditors will be held. Bankruptcy Rule 2003 provides the specifics:

### Rule 2003.
### MEETING OF CREDITORS OR EQUITY SECURITY HOLDERS

(a) Date and Place. The court shall call a meeting of creditors to be held not less than 20 nor more than 40 days after the order for relief. If there is an appeal from or a motion to vacate the order for relief, or if there is a motion to dismiss the case, the court may set a later time for the meeting. The meeting may be held at a regular place for holding court or at any other place designated by the court within the district convenient for the parties in interest.

(b) Order of Meeting.

\* \* \* \* \* \*

(3) Right to Vote. In a chapter 7 liquidation case, a creditor is entitled to vote at a meeting if, at or before the meeting, he has filed a proof of claim or a writing setting forth facts evidencing a right to vote pursuant to § 702(a) of the Code unless objection is made to the claim or the proof of claim is insufficient on its face.... Notwithstanding objection to the amount or allowability of a claim for the purpose of voting, the court may, after such notice and hearing as it may direct, temporarily allow it for that purpose in an amount that seems proper to the court.

\* \* \* \* \* \*

(d) Report to the Court. The presiding officer shall transmit to the court the name and address of any person elected trustee or a member of a creditors' committee. If an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

\* \* \* \* \* \*

Bankruptcy Rule 2003(a), (b)(3) and (d). At the first meeting of creditors, holders of unsecured claims may vote for the appointment of a trustee of their choosing. Bankruptcy Rule 2006.[4] Those holding at least

---

4. Bankruptcy Rule 2006 states as follows:
Rule 2006
SOLICITATION AND VOTING OF PROXIES IN CHAPTER 7 LIQUIDATION CASES

(a) Applicability. This rule applies only in a liquidation case pending under chapter 7 of the Code.
(b) Definitions.

(1) Proxy. A proxy is a written power of attorney authorizing any person to vote the claim or otherwise act as the owner's attorney in fact in connection with the administration of the estate.

(2) Solicitation of Proxy. The solicitation of a proxy is any communication, other than one from an attorney to a regular client who owns a claim or from an attorney to the owner of a claim who has requested the attorney to represent the owner, by which a creditor is asked, directly or indirectly, to give a proxy after or in contemplation of the filing of a petition by or against the debtor.

(c) Authorized Solicitation.

(1) A proxy may be solicited only by (A) a creditor owning an allowable unsecured claim against the estate on the date of the filing of the petition; (B) a committee elected pursuant to § 705 of the Code; (C) a committee of creditors selected by a majority in number and amount of claims of creditors (i) whose claims are not contingent or unliquidated; (ii) who are not disqualified from voting under § 722(a) of the Code; and (iii) who were present or represented at a meeting of which all creditors having claims of over $500 or the 100 creditors having the largest claims had at least five days notice in writing and of which meeting written minutes were kept and are available reporting the names of the creditors present or represented and voting and the amounts of their claims; or (D) a bona fide trade or credit association, but such association may solicit only creditors who were its members or subscribers in good standing and had allowable unsecured claims on the date of the filing of the petition.

(2) A proxy may be solicited only in writing.

(d) Solicitation Not Authorized. This rule does not permit solicitation (1) in any interest other than that of general creditors; (2) by or on behalf of any custodian; (3) by the interim trustee or by or on behalf of any person not qualified to vote under § 702(a) of the Code; (4) by or on behalf of an attorney at law; or (5) by or on behalf of a transferee of a claim for collection only.

(e) Data Required From Holders of Multiple Proxies. At any time before the voting commences at any meeting of creditors pursuant to Rule 2003, or at any other time as the court may direct, a holder of two or more proxies shall file with the clerk a verified list of the proxies to be voted and a verified statement of the pertinent facts and circumstances in connection with the execution and delivery of each proxy, including:

(1) a copy of the solicitation;

(2) identification of the solicitor, the forwarder, if he is neither the solicitor nor the owner of the claim, and the proxyholder, including their connections with the debtor and with each other. If the solicitor, forwarder, or proxyholder is an association, there shall also be included a statement that the creditors whose claims have been solicited and the creditors whose claims are to be voted were members or subscribers in good standing and had allowable unsecured claims on the date of the filing of the petition. If the solicitor, forwarder, or proxyholder is a committee of creditors, the statement shall also set forth the date and place the committee was organized, that the committee was organized in accordance with clause (B) or (C) of paragraph (c)(1) of this rule, the members of the committee, the amounts of their claims, when the claims were acquired, the amounts paid therefor, and the extent to which the claims of the committee members are secured or entitled to priority;

(3) a statement that no consideration has been paid or promised by the proxyholder for the proxy;

(4) a statement as to whether there is any agreement and, if so, the particulars thereof, between the proxyholder and any other person for the payment of any consideration in connection with voting the proxy, or for the sharing of compensation with any person, other than a member or regular associate of his law firm, which may be allowed the trustee or any person for services rendered in the case, or for the employment of any person as attorney, accountant, appraiser, auctioneer, or other employee for the estate;

(5) if the proxy was solicited by a person other than the proxyholder, or forwarded to the holder by a person who is neither a solicitor of the proxy nor the owner of the claim, a statement signed and verified by the solicitor or forwarder that no consideration has been paid or promised by him for the proxy, and whether there is any agreement, and, if so, the particulars thereof, between the solicitor or forwarder and any other person for the payment of any consideration in connection with voting the proxy, or for sharing compensation with any person other than a member or regular associate of his law firm which may be allowed the trustee or any person for services rendered in the case, or for the employment of any person as attorney, accountant, appraiser, auctioneer, or other employee for the estate;

(6) if the solicitor, forwarder, or proxyholder is a committee, a statement signed and verified by each member as to the amount and source of any consideration paid or to be paid to such member in connection with the case other than by way of dividend on his claim.

(f) Enforcement of Restrictions on Solicitation. On motion of any party in interest or on its own initiative, the court may determine whether there has been a failure to comply with the provisions of this rule or an other impropriety in connection with the solicitation or voting of a proxy. After notice and a hearing the court may reject any proxy for

20% of the amount of all votable claims under § 702(a) must request an election. § 702(b). A creditor may not vote for a trustee if the creditor has an interest adverse to that of creditors entitled to distributions of the estate as creditors. § 702(a)(2). An unsecured creditor who received a preference assailable under 11 U.S.C. § 547(b) has been held to be the holder of a materially adverse interest and therefore precluded from voting for such trustee under § 702(a)(2). *Waldschmidt v. Siva Truck Leasing, Inc.* (In Re Lang Cartage Corp.), 20 B.R. 534 (Bankr.E.D. Wis.1982). Contrariwise, the mere suspicion that an unsecured creditor has been given a preference is insufficient to brand the creditor as the holder of a materially adverse interest. *In Re Hale Desk Co.*, 89 F.2d 1 (2d Cir.1937). In the face of an objection to the amount or allowability of a claim for purposes of voting, the court may temporarily allow it for that purpose in an amount that seems proper to the court. Bankruptcy Rule 2003(b)(3). In the absence of an election, the interim trustee serves as the trustee. § 702(d).

Bankruptcy Rule 2006 augments the provisions of § 702. The rule is a comprehensive regulation of solicitation and voting of proxies in liquidation cases. Bankruptcy Rule 2006 Advisory Committee Note. A proxy is defined as "a written power of attorney authorizing any person to vote the claim or otherwise act as the owner's attorney in fact in connection with the administration of the estate." Bankruptcy Rule 2006(b)(1). The solicitation of a proxy is any communication—other than one (1) from an attorney to a regular client who owns a claim or (2) from an attorney to the owner of a claim who has requested that the attorney represent the owner—by which a creditor is asked, directly or indirectly, to give a proxy after or in contemplation of the filing of a petition by or against the debtor. Bankruptcy Rule 2006(b)(2). Solicitation is not authorized by

or on behalf of an attorney at law. Bankruptcy Rule 2006(d). The holder of two or more proxies must file with the clerk a verified statement prior to the first meeting of creditors or at another time fixed by the court. Bankruptcy Rule 2006(e). The information to be supplied in the statement is specified in Bankruptcy Rule 2006(e).

■ The threshold issue, raised by the unsecured creditors, is whether the interim trustee has standing to raise any objection. One case cited by the unsecured creditors holds that the interim trustee has no standing in a situation such as this. *In Re GIC Government Securities, Inc.*, 56 B.R. 105, 108 (Bankr.M.D.Fla.1985). We disagree. The trustee has ostensibly lost the opportunity to administer this bankruptcy and with it the possibility to earn commissions. Due process would seem to require that he has standing to challenge any defects in the process by which these rights were lost.

As stated above, a major question is whether an election for a trustee in a chapter 7 case may be validated although an attorney at law arguably violated the bar to the solicitation of proxies and, as a holder of multiple proxies, also allegedly failed to file with the clerk of the court a list of proxies and a statement of the pertinent circumstances surrounding the acquisition of those proxies. The first issue nested within this question is whether Walrath "solicited" the proxies. She asserts that she did not because solicitation does not include a communication requesting a proxy (1) between counsel and a regular client and (2) from an attorney to the claimant who has requested the attorney to represent the owner. Clark, Ladner testified that the eight claimants were regular clients and that each client independently requested the law firm to represent it in this proceeding.

While it is possible to predicate a decision on Walrath's assertions as supported by the testimony of Clark, Ladner, a more

---

cause, vacate any order entered in consequence of the voting of any proxy which should have been rejected, or take any other appropriate action.

Bankruptcy Rule 2006.

tenable basis is apparent. While it may be argued that Clark, Ladner solicited proxies and did not file a statement supporting the circumstances surrounding the alleged solicitation, these purported defects are harmless error. After all the discovery and scrutiny given by the interim trustee to the issue of solicitation, nothing of pertinence has been found other than what is related in this opinion.

■ Although Bankruptcy Rule 2006(f) treats the issue of the enforcement of restrictions on solicitation of proxies, the Advisory Committee Notes to that Rule reveal that, "Courts have been accorded a wide range of discretion in the handling of disputes involving proxies." Bankruptcy Rule 2006, Advisory Committee Notes. The Notes further state that, "This rule is not intended to restrict the scope of the court's discretion in the handling of disputes as to proxies." *Id.* Under this authority, we conclude that any deviation by Clark, Ladner from the requirements of Bankruptcy Rule 2006 was harmless, and that this harmless deviation is insufficient to invalidate the election of the trustee. A contrary conclusion would have been reached, had it appeared that Clark, Ladner conducted itself in bad faith.

The next major question is whether the election may be validated although the first meeting of creditors, at which the election took place, was convened beyond the time limits set forth in Bankruptcy Rule 2003(a). The rule is silent as to the consequences of holding a first meeting of creditors beyond the specified time limits.

■ In this situation we have what might be characterized as a conflict between a substantive right embodied in 11 U.S.C. § 702, authorizing the election of a trustee, and a procedural provision in Bankruptcy Rule 2003(a) which directs that the first meeting of creditors, at which the election is held, be convened within a particular period of time. As stated in the enabling statute which authorized the creation of Bankruptcy Rules:

### § 2075  Bankruptcy Rules

The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11 [the Code].

*Such rules shall not abridge, enlarge, or modify any substantive right.*

28 U.S.C. § 2075 (emphasis added). While it is true that procedural rules may work to cut off substantive rights, in the absence of any provision in a rule which mandates or strongly suggests such a result, the conflict should be resolved in favor of preserving the substantive right. *Englehardt v. Bell & Howell Co.,* 299 F.2d 480 (8th Cir. 1962). Furthermore, to hold otherwise would severely prejudice the rights of creditors for whose benefit the bankruptcy estate is ostensibly created, and who are not themselves responsible for the delay in the scheduling of the meeting. Consequently, we conclude that merely because the first meeting of creditors was not held within the prescribed time limits, the election of a chapter 7 trustee at that meeting is not, for that reason, invalid.

■ On another front the interim trustee requests that we invalidate the votes of certain creditors on the basis that he filed preference action against them after the elections. § 702(a)(2). We stated above the rule that an unsecured creditor, who holds an avoidable preference, has an interest adverse to that of creditors expecting to receive pro rata distributions of the estate. On the other hand, the mere suspicion of the receipt of a preference is insufficient to label that creditor as the holder of an adverse interest. Bridging these two poles, it is clear to us that while a party urging the disqualification of a creditor from voting under §§ 702 or 705, because of the alleged receipt of a preference, need not introduce sufficient evidence to support the entry of judgment on a preference action, a significant quantum of evidence is nonetheless required. Weighing the meager evidence introduced by the interim trustee, we conclude that insufficient evidence of preferences has been introduced for us to disqualify any of the votes at

issue because of alleged prepetition preferences.

■ The interim trustee also challenges the vote of Western Pacific Railway Company on the basis that it received a postpetition preference. The transfer at issue consists of $11,366.38, which is only a small portion of Western Pacific's claim. Since there is insufficient evidence for us to find that the alleged payment was made in bad faith, we will not disqualify Western Pacific's vote but, solely for purposes of voting under §§ 702 and 705, we will reduce the claim by the amount of the asserted postpetition transfer to $253,607.89. This reduction is inadequate to upset the elections under scrutiny.

■ The interim trustee also challenges the election of the trustee on the basis that Helmetag is "receiving a pension from Conrail", and thus his status, as such a pension recipient, is at odds with his being trustee. The evidence indicates that Helmetag was never employed by Conrail, although he worked many years for its predecessor, the Penn Central Railroad. He retired while in the employ of Penn Central, and the pension he was then given was at that time fully vested. With the creation of Conrail, Penn Central's assets were transferred to the new entity, and, in the process, Penn Central's funded pension plan was transferred to Conrail for administration. It appears from the testimony that Conrail has no discretion in paying Helmetag his periodic installments on the pension since all his rights are fully vested. We accordingly find this basis for objection meritless.

Two other objections advanced by the interim trustee are that Walrath withheld pertinent documents from the trustee and that Clark, Ladner has a conflict of interest in representing the creditors in that it also represents certain creditors in a related bankruptcy. We likewise find these points insufficient to overturn the elections.

We have analyzed the arguments proffered by the interim trustee and conclude that the interim trustee has failed to present an adequate basis for overturning the elections of the trustee and the creditors' committee. We will accordingly enter an order granting the creditors' motion for validation of those elections.