In re Andrew J. KEHOE and Catherine M. Kehoe, Debtors.

Andrew J. KEHOE and Catherine M. Kehoe, Appellants,

v.

Joseph L. SCHINDLER, Chapter 7 Trustee, Appellee.

BAP No. MB 97–112.
Bankruptcy No. 96–10559–WCH.

United States Bankruptcy Appellate Panel of the First Circuit.

April 23, 1998.

Michael C. Shea, Brookline, MA, for Andrew and Catherine Kehoe.

Gary Donahue, Office of U.S. Trustee, Boston, MA, for U.S. Trustee.

Barry Altman, Altman & Altman, Wilmington, MA, David J. Reier, Goldstein & Manello, P.C., Joseph I. Schindler, Boston, MA, for Sharon Nauss, Meetinghouse Cooperative Bank and Joseph I. Schindler.

Before GOODMAN, HAINES and CARLO, Bankruptcy Judges.

## ORDER

HAINES, Bankruptcy Judge.

Appellee Joseph L. Schindler, trustee, has moved to dismiss the Chapter 7 debtors' appeal of the bankruptcy court's order certifying him as permanent, elected trustee. Schindler asserts that the debtors lack standing. We agree.

## DISCUSSION

*Where Matters Stand*

Andrew and Catherine Kehoe filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 25, 1996. Their case was converted to Chapter 7 on September 23, 1997. Upon conversion, the U.S. Trustee appointed Stephen S. Gray as interim trustee. Several creditors, having announced in advance their intention to elect a permanent trustee of their choosing, appeared at the meeting of creditors on October 27, 1997. With a representative of the United States Trustee's office presiding, Meetinghouse Cooperative Bank and Sharon Nauss invoked § 702 and initiated election of a permanent trustee.[1] The debtors objected,

---

1. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978 ("Code" or "Bankruptcy Code"), as amended, 11 U.S.C. § 101, *et seq.*

Section 702 provides:

(a) A creditor may vote for a candidate for trustee only if such creditor—

(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title;

(2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and

(3) is not an insider.

(b) At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

(c) A candidate for trustee is elected trustee if—

(1) creditors holding at least 20 percent in amount of the claims of a kind specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section; and

citing § 702(a)(1), contending that Meetinghouse and Nauss held disputed claims and, at least in Meetinghouse's case, held secured claims. The election proceeded. Meetinghouse and Nauss voted for Schindler, and, consistent with Fed.R.Bankr.P. 2003(d),[2] the U.S. Trustee filed a report of contested election, with Schindler listed as the elected trustee.

The bankruptcy court convened a hearing and, over the debtors' objection, certified Schindler's election. This appeal ensued.

*Standing Standard*

■ To defeat the appellee's dismissal motion, the Kehoes must demonstrate that they have standing to appeal the bankruptcy court's certification of Schindler's election as trustee. They have appellate standing if they qualify as "persons aggrieved" by that order. *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987). *See accord Weston v. Mann (In re Weston),* 18 F.3d 860, 863 (10th Cir.1994); *Fondiller v. Robertson (In re Fondiller),* 707 F.2d 441, 443 (9th Cir.1983); *Norway Nat'l Bank v. Goodwin's Discount Furniture, Inc. (In re Goodwin's Discount Furniture, Inc.),* 16 B.R. 885, 887 (1st Cir. BAP 1982); *Troy Plastics v. North Hills II, L.P.,* 129 B.R. 473, 474 (E.D.Mich.1991).[3]

■ The rule limiting appellate standing to "persons aggrieved" by bankruptcy court orders springs from well established principles of judicial economy and the parties' need for an orderly administration of each bankruptcy case. The First Circuit has observed:

This rule of appellate standing is necessary to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does not serve the interests of either the [debtor's] estate or its creditors. The nature of bankruptcy litigation, with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court, mandates that the right of appellate review be limited to those persons whose interests are directly affected.

*In re El San Juan Hotel, Inc.,* 809 F.2d at 154. *See also In re Goodwin's Discount Furniture, Inc.,* 16 B.R. at 889.

■ To qualify as "persons aggrieved," the Kehoes must demonstrate that they were "directly and adversely affected pecuniarily" by the court's order upholding the results of the § 341 trustee election. *In re Fondiller,* 707 F.2d at 442. *See also e.g., Pignato v. Dein Host, Inc. (In re Dein Host, Inc.),* 835 F.2d 402, 405 (1st Cir.1987); *In re El San Juan Hotel,* 809 F.2d at 154 (quoting *In re Fondiller*). That is, the order must "diminish the [Kehoes'] property, increase [their] burdens, or detrimentally affect [their] rights." *In re Fondiller,* 707 F.2d at 442. *Accord e.g., In re El San Juan Hotel,* 809 F.2d at 154; *In re Williams,* 181 B.R. 532, 535 (D.Kan.1995); *Troy Plastics,* 129 B.R. at 474.

Election of a trustee directly impacts the bankruptcy estate and, therefore, its beneficiaries. After all, the trustee is the estate's representative. *See* § 323 ("The trustee in a

(2) such candidate receives the votes of creditors holding a majority in amount of claims specified in subsection (a)(1) of this section that are held by creditors that vote for a trustee.
(d) If a trustee is not elected under this section, then the interim trustee shall serve as trustee in the case.

**2.** Rule 2003(d) provides:
**(d) Report to the Court.** The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of a creditors' committee. If an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists. Pending disposition by the court of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of

such election dispute is made to the court within 10 days after the date of the creditors' meeting, the interim trustee shall serve as trustee in the case.

**3.** The doctrine of appellate standing under the Bankruptcy Code is derived from the appellate standing doctrine developed under the Bankruptcy Act. *See In re El San Juan Hotel,* 809 F.2d at 154 (recognizing that the requirements for standing under the Act's § 39(c) continue as prerequisites for standing to appeal an order under the Code even though there is no equivalent section under the Code); *accord In re Fondiller,* 707 F.2d at 443 (observing that "[t]he need for the rule" limiting appellate standing to persons aggrieved "continues to exist" despite the omission of a provision comparable to the Act's § 39(c) in the Code).

case under this title is the representative of the estate."); *Edmonston v. Murphy (In re Edmonston)*, 107 F.3d 74, 76 (1st Cir.1997); *see also;* § 704 (describing duties of the trustee); *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. at 887–88 (observing that the trustee, representing the unsecured creditors, has standing to appeal orders on claim allowance and disposing of estate property, not the "[h]opelessly insolvent" debtor). And, in the usual case, it is the creditors, not the debtors, who are the estate's beneficiaries.

*Standing in a Chapter 7 Debtor's Shoes*

For present purposes, bankruptcy court orders may be divided into two broad categories: (1) orders that affect the estate and (2) orders that directly affect Chapter 7 debtors' rights.

■ Chapter 7 debtors "ordinarily" lack standing to challenge orders affecting the assets of the estate. *In re El San Juan Hotel*, 809 F.2d at 154–55. *Accord In re Goodwin's Discount Furniture, Inc.*, 16 B.R. at 887 (collecting cases); *Troy Plastics*, 129 B.R. at 475. This is so because under the Code their legal and equitable property interests pass to the bankruptcy estate and all prepetition creditors' claims become estate liabilities. *See* § 541(a)(commencement of case "creates an estate"); § 502 (allowance of claims); *In re El San Juan Hotel*, 809 F.2d at 154 & n. 5 (debtor normally has no interest in the distribution of estate's property); *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. at 887 (same).

■ Nevertheless, the law is well-settled that Chapter 7 debtors do have standing to appeal orders that directly affect their interests and, in limited circumstances, orders affecting the estate. *See In re El San Juan Hotel*, 809 F.2d at 155 n. 6; *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. at 888. Sometimes described as "exceptions" to the general rule that Chapter 7 debtors lack standing, *see In re El San Juan Hotel*, 809 F.2d at 155 n. 6, they represent instances when Chapter 7 debtors are sufficiently aggrieved to maintain appeals of bankruptcy court orders.

■ As to orders affecting the estate generally (*e.g.*, objections to claims or dispositions of assets), if a successful appeal would create assets in excess of liabilities and, thus, result in a surplus distributable to the debtor under § 726(a)(6), the debtor may appeal. Second, a debtor may appeal those orders that determine or directly affect the debtor's rights under the Code (*e.g.*, orders shaping the discharge or affecting exemptions). *See In re Weston*, 18 F.3d at 863–64, 864 n. 3 ("Unless the estate is solvent and excess will eventually go to the debtor, or unless the matter involves rights unique to the debtor [—] [f]or example, discharge of debts or exemption of property from the estate [—] the debtor is not a party aggrieved by orders affecting the administration of the bankruptcy estate."); *accord El San Juan Hotel*, 809 F.2d at 155 n. 6; *Blue Mountain Invs., Ltd. v. Bone (In re Blue Mountain Invs., Ltd.)*, 186 B.R. 508, 512 (D.Kan.1995); *In re Williams*, 181 B.R. at 535; *Troy Plastics*, 129 B.R. at 475. Such orders directly affect a debtor's pecuniary interests.

*Where the Kehoes Stand*

The Kehoes, complaining mightily how Schindler's election makes all the difference to them between a fresh start and perpetual ruin, have advanced no specific arguments as to how Schindler's trusteeship (as opposed to anyone else's) directly and adversely affects them. The deficiency in their argument is understandable: the assertion is groundless.

*a. Potential for a surplus.*

■ General protests notwithstanding, Schindler's election as trustee, in and of itself, has no direct bearing on the question whether the bankruptcy estate will realize sufficient value to generate a surplus distributable under § 726(a)(6). Thus, the Kehoes' appeal obtains no purchase on this ground. *See In re El San Juan Hotel*, 809 F.2d at 155 n. 6; *In re Blue Mountain Invs., Ltd.*, 186 B.R. at 512; *In re Williams*, 181 B.R. at 535. Mere hope, however fervent, that Schindler's ouster now would improve the Kehoes' prospects down the road is insufficient to confer standing: "It is incumbent upon [the debtor] to show that the order appealed from would

directly and adversely affect the possibility of residual assets being available to the [d]ebtor." *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. at 888.

Simply stated, the connection between the Chapter 7 trustee's identity and the possibility of a surplus is far too flimsy a platform to support standing. *See In re Weston*, 18 F.3d at 863–64 (asserted possibility of surplus did not confer standing for debtor's appeal regarding Chapter 7 trustee election); *Troy Plastics*, 129 B.R. at 475 (dismissing argument that a successful appeal regarding identity of trustee could create surplus); *also In re Williams*, 181 B.R. at 535–36 (debtors' conclusory allegation that the trustee's litigation of two adversary proceedings to judgment would create a surplus was insufficient to confer standing to appeal order approving compromise).

Certainly, Schindler's actions, like any trustee's, will be subject to scrutiny in the court below. If the Kehoes can show a direct connection between his actions and a distributable surplus they may be heard and would have standing to appeal an order that affects them adversely. *Cf. e.g., In re Blue Mountain Invs., Ltd.*, 186 B.R. at 512 (debtor had standing to appeal adversary proceeding orders affecting title to real property where successful appeal would bring the property into the estate and could result in a surplus).

### b. Discharge and exemptions.

The Kehoes have advanced, and we can discern, no way in which Schindler's election impacts the rights of the Kehoes in their Chapter 7 case. There is no direct correlation between Schindler's installation as trustee and the contour of the Kehoes' discharge, *compare Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760 (1st Cir.1994)(debtor's appeal of an order denying discharge), or their exemption entitlements. *Compare Petit v. Fessenden*, 80 F.3d 29 (1st Cir.1996); *Mercer v. Monzack*, 53 F.3d 1 (1st Cir.1995) (debtors' appeals of orders denying exemption claims).

▮ The possibility that Schindler (as opposed to anyone else) might someday dispute the Kehoes' exemption claims or object to their discharge does not confer standing upon them to challenge his election today. *See In re El San Juan Hotel*, 809 F.2d at 155 ("[A] debtor, contesting a bankruptcy court order, whose only interest or burden is as a future party defendant, does not qualify as an 'aggrieved person.' "); *accord In re Fondiller*, 707 F.2d at 443. Thus, the Kehoes' appeal is without footing on this basis, as well. *See In re Weston*, 18 F.3d at 863–64, 864 n. 3; *El San Juan Hotel*, 809 F.2d at 155 n. 6; *In re Goodwin's Discount Furniture, Inc.*, 16 B.R. at 888; *In re Williams*, 181 B.R. at 535; *Troy Plastics*, 129 B.R. at 475.

### Standing Back—A Broader View

The Kehoes' challenge to the trustee election is based on their assertion that two ineligible creditors voted for Schindler at the § 341 meeting. *See* § 702(a)(setting eligibility requirements for creditors voting on permanent trustee). They argue that because the Meetinghouse and Nauss claims were disputed and, in addition, at least partially secured, their interests were "materially adverse" to the interests of unsecured creditors.

▮ Whether or not the points they make are accurate, this is simply not the Kehoes' fight. Section 702(a)'s provisions operate to protect the estate's creditors, not the debtors. *See cf. In re Fondiller*, 707 F.2d at 442 (order authorizing appointment of special counsel); *In re Williams*, 181 B.R. at 535 (order approving trustee's compromise claim).

▮ Generally, our conclusion accords with the determinations of other courts that have considered issues regarding standing to appeal trustee elections. *Compare Troy Plastics*, 129 B.R. at 474–75 (debtors lack standing to appeal order confirming permanent trustee), with *J.P. Morgan Inv. Management, Inc. v. United States Trustee (In re Martech USA, Inc.)*, 188 B.R. 847, 850 (9th Cir. BAP 1995) (creditors attending the § 341 meeting and voting for trustee have standing to appeal order disqualifying trustee elected in a disputed vote), and *Berg v. Esposito (In re Oxborrow)*, 104 B.R. 356, 360 (E.D.Wash.1989)(holders of "allowable, un-

disputed, fixed, liquidated, unsecured claims" have standing to appeal order voiding the election of a permanent trustee). *See also In re St. George Island, Ltd.,* 137 B.R. 857, 859–60 (Bankr.N.D.Fla.1991)(U.S. Trustee, as entity having supervisory and reporting responsibility for trustee elections, has standing to dispute trustee election before the trial court); *In re Sandhurst Sec., Inc.,* 96 B.R. 451, 456–57 (Bankr.S.D.N.Y.1989)(candidate for trustee, with obvious self-interest in election result, is not "interested" within the meaning of the Code and Rules provisions governing contests to elections); *In re Poage,* 92 B.R. 659, 663 (Bankr.N.D.Tex. 1988)("An interim trustee is the optimal party to object to a creditor's claim for voting purposes since he is the representative of the estate and the purpose behind the § 702 voting restrictions is to protect the bankruptcy estate.") (citation omitted).[4]

## CONCLUSION

■ The Kehoes are not "directly and adversely affected pecuniarily" by the bankruptcy court's Rule 2003(d) order certifying

4. The Bankruptcy Code and Rules do not expressly limit who may contest a trustee's election or challenge a vote. *See* Fed.R.Bankr.P. 2003(b)(3) (any creditor has a right to vote pursuant to § 702 "unless objection is made to the claim"); Fed.R.Bankr.P. 2003(d)(officer presiding over the § 341 meeting shall inform the court of election disputes).

We note that, in some circumstances, bankruptcy courts have recognized the debtor's right to object to a trustee's election. *See In re Nanvarok Seven, Inc.,* 148 B.R. 86, 87 (Bankr.D.C.1992)(considering debtor's objection that a conflict of interest barred approval of creditors' trustee candidate); *In re Blesi,* 43 B.R. 45, 48 (Bankr.D.Minn.1984)(hearing, but overruling debtor's objection to trustee's election); *see also In re Sforza,* 174 B.R. 656, 658–59 (Bankr.D.Mass.1994)(sustaining debtor's objection to trustee election without discussing whether debtor had a right to object).

In *In re Blesi* the court reasoned that the right to object to a creditor's vote under Rule 2003(b)(3) was contingent on the objecting party being "an interested party," a term the court culled from the Rule 2003 Advisory Committee Note. 43 B.R. at 48. Noting that the term was not defined by the Code or Rules, the court concluded that the debtor was "interested" because the debtor is always present for questioning at the § 341 meeting and has the most information about creditors' claims and interests.

Schindler's election. They lack standing to bring this appeal. We hereby order this APPEAL DISMISSED.

*See id.* Citing *In re Blesi,* the court in *In re Nanvarok Seven, Inc.* simply stated: "The debtor is clearly an interested party and has standing to raise objections to the election of a chapter 7 trustee." 148 B.R. at 87.

We need not determine whether the "interest" that entitles a party to object to a creditor's vote or a trustee's election in the bankruptcy court is broader than the character of interest that will confer appellate standing. However, we do not agree that a cognizable § 702/Rule 2003 "interest" arises by virtue of the debtor's attendance at the § 341 meeting or the debtor's familiarity with the claims of his or her creditors. After all, the debtor *must* attend the § 341 meeting and *must* provide accurate information about assets and liabilities. *See* § 343. Although the debtor's knowledge and participation may assist others in, for example, deciding whether to object to a particular creditor's vote, we cannot identify a Chapter 7 debtor's legally cognizable interest in the trustee's identity or election. *Cf. In re Sandhurst Sec., Inc.,* 96 B.R. at 456–57 (emphasizing that a trustee candidate's election aspirations and hopes for a commission do not confer "interested party" status, reflecting that the candidate's interest is not the interest of the estate and its creditors that § 702 protects); *In re Michelex,* 195 B.R. 993, 1010 (Bankr.W.D.Mich.1996) (although interim trustee may object to a § 702 election, the objection "must be premised solely upon the interests of creditors and the goal that the election process be valid and honest").